JS-6

DAVID C. SHONKA
Acting General Counsel
AMY C. HOCEVAR (Ohio Bar #0075510)
ahocevar@ftc.gov
NICOLE J. GUINTO (Ohio Bar #0089319)
nguinto@ftc.gov
DANA C. BARRAGATE (Ohio Bar #0065748)
dbarragate@ftc.gov
Federal Trade Commission
1111 Superior Avenue, Suite 200
Cleveland, Ohio   44114
Hocevar Phone: (216) 263-3409
Guinto Phone: (216) 263-3435
Barragate Phone:   (216) 263-3402
Fax: (216) 263-3426

Local Counsel
THOMAS J. SYTA (California Bar #116286)
tsyta@ftc.gov
Federal Trade Commission
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
Phone: (310) 824-4343
Fax: (310) 824-4380

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>AURA LABS, INC., a corporation, also d/b/a AuraLife and AuraWare, and<br><br>RYAN ARCHDEACON, individually and as an officer of AURA LABS, INC.,<br><br>    Defendants. | Case No. 8:16-cv-2147-DOC (KESx)_<br><br>ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT [3] |

Page 1  of  25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b).   The Commission and Defendants Aura Labs, Inc. and Ryan Archdeacon stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

### FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and disseminated false advertisements in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics in violation of Section 12 of the FTC Act, 15 U.S.C. § 52, in connection with the advertising, marketing, distribution, and sale of a mobile device software application called Instant Blood Pressure.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.   Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.     Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.     Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.   In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of

the communication even if the representation requiring the disclosure is made in only one means.

2.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.     An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.     In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.     The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.     The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.     The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.     When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

B.     "**Covered Product**" means any Device that purports to Measure blood pressure or serve as a replacement for a traditional blood pressure cuff, including but not limited to Instant Blood Pressure.

C.     "**Defendants**" means Individual Defendant and Corporate Defendant, individually, collectively, or in any combination.

1.     "**Corporate Defendant**" means Aura Labs, Inc., also d/b/a AuraLife and AuraWare, and its successors and assigns.

2.     "**Individual Defendant**" means Ryan Archdeacon.

D.     "**Device**" means, as defined in Section 15 of the FTC Act, 15 U.S.C. § 55, an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is –

1.      Recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them,

2.      Intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or

3.      Intended to affect the structure or any function of the body of man or other animals, and which does not achieve any of its principal intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

E.      "**Endorsement**" means, as defined in 16 C.F.R. § 255.0(b), any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical to those of the sponsoring advertiser.   The party whose opinions, beliefs, findings, or experience

the message appears to reflect will be called the endorser and may be an individual, group, or institution.

F.      "**Material Connection**" means any relationship that materially affects the weight or credibility of any Endorsement and that would not be reasonably expected by consumers.

G.      "**Measure**" or "**Measures**" means to calculate, approximate, estimate, predict, or otherwise ascertain the value, number, quantity, amount, or degree of something.

H.      "**Person**" means a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

I.      "**Reliably Reported**," for a human clinical test or study, means a report of the test or study has been published in a peer-reviewed journal, and such published report provides sufficient information about the test or study for experts in the relevant field to assess the reliability of the results.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ORDER

## I.   PROHIBITED REPRESENTATIONS REGARDING BLOOD PRESSURE

**IT IS ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, Endorsement, depiction, or illustration, any representation that such product:

A.    Serves as a replacement for a traditional blood pressure cuff;

B.    Measures blood pressure;

C.    Measures blood pressure as accurately as a traditional blood pressure cuff; or

D.    Measures blood pressure with a specified degree of accuracy,

unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of such product that is sufficient in quality and quantity, based on standards generally accepted by experts in the relevant field, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.   Such testing shall conform to actual use conditions, include a representative range of blood pressures and representative groups of subjects, and be conducted by researchers qualified by training and experience to conduct such testing.   In addition, all underlying or supporting data and documents generally accepted by experts in the relevant field as relevant to an assessment of such testing as described in the Section entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the Commission.

## II.  PROHIBITED REPRESENTATIONS:
## OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Device, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, Endorsement, depiction, or illustration, any representation, other than representations covered under Section I of this Order, about the health benefits or health efficacy of any Device, unless the representation is non-misleading, and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and

evaluated in an objective manner by qualified experts; (2) that are generally accepted by qualified experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Device, when qualified experts would generally require such human clinical testing to substantiate that the representation is true.   In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the Commission.

### III.   DECEPTIVE USE OF ENDORSEMENTS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Device, must not:

Page 11  of  25

A.    Misrepresent, in any manner, expressly or by implication, the status of any user or endorser of a Device, including, but not limited to, misrepresenting that the user or endorser is an independent user or ordinary consumer of the Device; or

B.    Make any representation, in any manner, expressly or by implication, about any user or endorser of such Device unless they disclose, Clearly and Conspicuously, a Material Connection, when one exists, between such user or endorser and Defendants or any other individual or entity manufacturing, labeling, advertising, promoting, offering for sale, selling, or distributing such Device.

## IV.   PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants must secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including, but not necessarily limited to:

A.    All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other Person not employed by the research entity;

B.     All documents referring or relating to recruitment; randomization;

instructions, including oral instructions, to participants; and participant

compliance;

C.     Documents sufficient to identify all test participants, including any

participants who did not complete the test, and all communications with any

participants relating to the test; all raw data collected from participants enrolled in

the test, including any participants who did not complete the test; source

documents for such data; any data dictionaries; and any case report forms;

D.     All documents referring or relating to any statistical analysis of any test

data, including, but not limited to, any pretest analysis, intent-to-treat analysis, or

between-group analysis performed on any test data; and

E.     All documents referring or relating to the sponsorship of the test, including

all contracts and communications between any sponsor and the test's researchers.

     *Provided, however*, the preceding preservation requirement shall not apply

to a Reliably Reported test, unless the test was conducted, controlled, or

sponsored, in whole or in part by:   (1) any Defendant; (2) any Defendant's

officers, agents, representatives, or employees; (3) any other Person or entity in

active concert or participation with any Defendant; (4) any Person or entity

affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.   These procedures shall be documented in writing and shall contain administrative, technical, and physical safeguards appropriate to Corporate Defendant's size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## V.   MONETARY JUDGMENT AND SUSPENSION

**IT IS FURTHER ORDERED** that:

A.     Judgment in the amount of Five Hundred Ninety-Five Thousand, Nine Hundred Forty-Five Dollars and Twenty-Seven Cents ($595,945.27) is entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

B.     The judgment is suspended subject to the Subsections below.

C.     The Commission's agreement to the suspension of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

> 1.  the Financial Statement of Individual Defendant Ryan Archdeacon, signed on June 23, 2016, including the attachments;
>
> 2.  the Financial Statement of Corporate Defendant Aura Labs, Inc., signed on June 20, 2016, including the attachments.

D.     The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Commission, the Court finds that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

E.     If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made

pursuant to this Section, plus interest computed from the date of entry of this Order.

F.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

G.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

H.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

I.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which must be submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

J.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.   If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.   Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.   Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VI.   CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from failing to provide sufficient customer information to enable the Commission to efficiently

Page 17  of  25

administer consumer redress.   Defendants represent that they have provided this redress information to the Commission.   If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

## VII.   ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.     Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 5 years after entry of this Order, Individual Defendant, for any business that Individual Defendant, individually or collectively with Corporate Defendant, is the majority owner or controls directly or indirectly, and Corporate Defendant, must deliver a copy of this Order to:   (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of this Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled "Compliance Reporting."   Delivery must occur within 7 days of entry of

this Order for current personnel.   For all others, delivery must occur within 10 days after they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VIII.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.      Sixty days after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Defendant must:   (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the

involvement of any other Defendant (which Individual Defendant must describe if he knew or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.       Additionally, Individual Defendant must:   (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services, whether as an employee or otherwise, and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.       For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defendant must report any change in:   (a) any designated point of contact; or (b) the structure of Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Individual Defendant performs services, whether as an employee or otherwise, and any entity in which Individual Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with

Page 21  of  25

28 U.S.C. § 1746, such as by concluding:   "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on:   _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.   Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin:   *FTC v. Aura Labs, Inc., et al.*

## IX.   RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendant and Individual Defendant, for any business that Individual Defendant, individually or collectively with Corporate Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.   accounting records showing the revenues from all goods or services sold;

B.     personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's:   name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     records of all complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.     all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.     a copy of each unique advertisement or other marketing material.

## X.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which the judgment was suspended:

A.     Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must:   submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of

court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69 provided that Defendants, after attempting to resolve a dispute without court action and for good cause shown, may file a motion with this Court seeking an order for one or more of the protections set forth in Rule 26(c).

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.   Defendant must permit representatives of the Commission to interview any employee or other Person affiliated with any Defendant who has agreed to such an interview.   The Person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.   Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual

Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681(b)(a)(1).

## XI.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.


IT IS SO ORDERED.


DATED: December 9, 2016

_David O. Carter_
UNITED STATES DISTRICT JUDGE

Page 25  of  25